UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEJANDRO LUPIAN, JUAN LUPIAN, JOSE REYES, EFFRAIN LUCATERO, ISAIAS LUNA,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>JOSEPH CORY HOLDINGS, LLC,<br><br>　　　　Defendant. | Civ. No. 2:16-05172<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

　　　　Plaintiffs Alejandro Lupian, Juan Lupian, Jose Reyes, Effrain Lucatero and Isaias Luna (collectively "Plaintiffs") bring this class action against Joseph Cory Holdings, LLC ("Defendant"), alleging violations of Illinois and New Jersey wage laws and unjust enrichment, in connection with Plaintiffs' independent contractor agreements with Defendant. This matter comes before the Court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED, in part,** and, **DENIED, in part.**

　　**I.　　BACKGROUND**

　　　　Defendant is a New Jersey motor carrier corporation that provides delivery services for retail companies throughout the United States, delivering appliances, furniture and other goods to the retail companies' customers. *See* Compl. ¶¶ 9, 13. Plaintiffs are Illinois residents who performed services for Defendant as delivery drivers at various times between the years 2000 and 2016. *See id.* at ¶¶ 3–8. At all times, Defendant engaged Plaintiffs as independent contractors pursuant to a contract executed by the parties. *See id.* at ¶ 15; Def.'s Mem. in Supp. of Its Mot. to Dismiss ("Def.'s Mem.") 1, n.1, ECF No. 8.

　　　　Defendant engages independent contractor delivery drivers under two types of agreements. Where the driver transports property under Defendant's motor carrier authority, the parties execute a Transportation Service Agreement ("TSA"). *See* Def.'s Mem., Ex. 2. Where the driver transported property under its own motor carrier authority, the parties execute a Dedicated Contract Carrier Agreement ("DCCA"). *See id.*, Ex. 1. Both the TSA and DCCA contain forum selection and choice-of-law clauses, which

provide that all disputes between the parties shall be adjudicated in the State of New Jersey and under New Jersey law. *See id*. Ex. 1 at ¶ 28; Ex. 2 at ¶¶ 31–32. Plaintiffs operated under a DCCA. *See* Compl. at ¶¶ 11, 15.

Plaintiffs bring a class action complaint (the "Complaint") on behalf of themselves and all similarly situated persons who provided delivery services to Defendant, either as an individual or through a business entity, in the State of Illinois and throughout the United States. *Id*. at ¶ 26. Plaintiffs allege violations of Illinois and New Jersey wage laws and claims that Defendant was unjustly enriched. *See id*. at ¶¶ 33–56.

Defendant now moves to dismiss the Complaint, arguing: (1) the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c), preempts the state wage law claims, *see* Def.'s Mem. at 3–9; (2) Plaintiffs lack standing to bring the New Jersey law claims, *see id*. at 9–10; and (3) Plaintiffs' unjust enrichment claim fails because a contract governs the relationship of the parties, *see id*. at 11–12. On October 24, 2016, Plaintiffs filed a response, opposing the motion. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 19. Defendant filed a reply seven days later. *See* Def.'s Reply in Supp. of Its Mot. to Dismiss ("Def.'s Reply"), ECF No. 25. Both parties filed notices of supplemental authority and opposition responses thereto in the intervening period. *See* ECF Nos. 28–35.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

### III. DISCUSSION

Plaintiffs allege that Defendant misclassified them as independent contractors when they should have been classified as Defendant's employees under applicable state law. *See* Compl. at ¶¶ 2, 16. Plaintiffs also allege the following:

- **Count I:** Defendant violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/9, by making unlawful deductions from Plaintiffs' wages, *see id*. at ¶ 37;
- **Count II:** Defendant violated the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. §§ 34:11-4.2, 24:11-4.4, by failing to pay Plaintiffs wages due and subjecting them to unlawful wage deductions, *see id*. at ¶ 44;
- **Count III:** Defendant violated New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. § 34:11-5a(4), by failing to pay Plaintiffs overtime premiums for hours worked over 40 hours per week, *see id*. at ¶ 52; and
- **Count IV:** Defendant was unjustly enriched by classifying Plaintiffs as independent contractors, which forced Plaintiffs to pay for work-related expenses that should have been provided by Defendant, *see id*. at ¶¶ 54–56.

Plaintiffs argue their New Jersey law claims in the alternative to their Illinois law claim. *See id*. at ¶ 2. The Court, therefore, must first consider which law applies in the instant case where the parties agreed to a New Jersey choice-of-law clause in their contracts.[1] The Court will then consider Defendant's federal preemption argument and Plaintiffs' unjust enrichment claim.

#### A. Choice of Law

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992). New Jersey has adopted the *Restatement (Second) of Conflicts of Laws* § 187, "which provides that the law of the state chosen by the parties will apply, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties." *See id*. at 342. New Jersey clearly has a substantial relationship to the parties because Defendant is its citizen and the first exception, therefore, does not apply.

The second exception, however, applies in the instant case. The IWPCA applies to Illinois employees and Illinois employers. *See* 820 Ill. Comp. Stat. 115/1. The statute's "evident purpose is to protect employees *in Illinois* from being stiffed by their employers .

---

[1] The parties do not contest the forum selection clause. The Court, therefore, will assume its validity. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("courts normally defer to a plaintiff's choice of forum").

. . ." *See Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (citations omitted) (emphasis original). Courts have interpreted this purpose to mean that Illinois public policy disallows IWPCA claims brought by out-of-state employees against Illinois employers or claims by Illinois employees against out-of-state employers. *See id.*; *Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 913 (Ill. App. Ct. 2001).

The extraterritorial application of the NJWPL and NJWHL is less clear; however, it is well settled that "New Jersey law does not regulate conduct outside the state." *See D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 539–40 (1993). The few courts that have considered the issue have all held "that the NJWPL *does not* apply to employees based outside of New Jersey." *See Overton v. Sanofi-Aventis U.S., LLC*, No. 13-cv-5535, 2014 WL 5410653, at *5–6 (D.N.J. Oct. 23, 2014) (citing multiple cases from various state and federal courts and finding the reasoning therein persuasive that the NJWPL does not apply to out-of-state employees) (emphasis original). This Court agrees.

Given the public policy interests against extraterritorial application of both the Illinois and New Jersey statutes, the Court finds that the IWPCA is the proper statute to apply in this case where Illinois workers are claiming violations of wage laws in connection to conduct occurring within Illinois. The Court, therefore, will not enforce the choice-of-law clauses in the parties' contracts and instead apply Illinois law. Accordingly, the Court will **GRANT** Defendant's motion with respect to the New Jersey wage law claims and Counts II and III of the Complaint are **DISMISSED with prejudice**.

### B. Federal Preemption

The IWPCA provides "employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers," and prohibits certain wage deductions unless certain criteria are met. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (internal quotation and citation omitted). The statute defines "employee" by incorporating a three-prong test, which provides:

> As used in this Act, the term "employee" shall include any individual permitted to work by an employer in an occupation, but shall not include any individual:
>
> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and
>
> (3) who is in an independently established trade, occupation, profession or business.

820 Ill. Comp. Stat. 115/2.  The failure to meet any one of the three prongs requires that the individual in question be classified as an employee.  *See Costello*, 810 F.3d at 1050.

Defendant argues that the FAAAA preempts the application of the IWPCA in this case because: (1) Plaintiffs' claims concern the transportation of property; (2) Plaintiffs' claims relate to Defendant's services as a motor carrier; and (3) Plaintiffs' claims emanate from a voluntary contractual undertaking.  *See* Def.'s Mem. at 4–7.  Plaintiffs counter that the IWPCA is not preempted because it does not have a "significant impact" on Defendant's prices, routes or services.  *See* Pls.' Resp. at 8–15.  The Court notes that there appears to be a split between the First Circuit and the Seventh, Ninth and Eleventh Circuits, concerning the limit of federal preemption over state wage laws.  While multiple courts in this district have considered the matter, the Third Circuit has yet to reach the issue.

### i. The FAAAA Preemption Provision and Judicial Interpretations

The FAAAA preemption provision provides, in pertinent part:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*See* 49 U.S.C. § 14501(c)(1).  The statute expressly provides for three exceptions to federal preemption: safety regulations (including insurance requirements); intrastate transportation of household goods; and tow truck operations.  *See* § 14501(c)(2).  The statute also expressly reserves state authority to regulate such areas as uniform cargo rules and antitrust immunity for agent-van line operations, among other similar concerns.  *See* § 14501(c)(3).  The statute does not address state employment or wage laws.

Congress passed the FAAAA to preempt state trucking regulation and maximize reliance on competitive market forces in the trucking industry.  *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008).  In so doing, it incorporated the preemption provision found in the Airline Deregulation Act of 1978 ("ADA"), which in turn incorporated similar preemption language found in the Employee Retirement Income Security Act of 1974 ("ERISA").  *Id.*; *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992).  The Supreme Court has interpreted all three preemption provisions with the same understanding: the provisions' plain meaning expresses a broad preemptive purpose.  *See Rowe*, 552 U.S. at 370–71; *Morales*, 504 U.S. at 383–84.

FAAAA preemption is required: (1) when a state enforcement action has a connection with, or reference to, motor carrier rates, routes or services; (2) even when a state law's effect on rates, routes or services is only indirect; (3) regardless of whether a state law is consistent with federal law; and (4) when a state law has a significant impact related to Congress' deregulatory and preemption-related objectives.  *See Rowe*, 552 U.S. at 370–71 (citing the *Morales* court's interpretation of the ADA preemption provision).  Preemption is not unlimited; however, state laws that impact the trucking industry "in only

5

a 'tenuous, remote or peripheral . . . manner'" might not be preempted. *See id*. at 371 (quoting *Morales*, 504 U.S. at 390).

The Supreme Court has identified a line between, on the one hand, a state law's indirect impact on the airline and trucking industries that warrants preemption and, on the other hand, a state law's impact that is too attenuated to warrant preemption. On one side of that line, the Court found preemption warranted where: a state's public health law regulated transporters of tobacco, *see Rowe*, 552 U.S. at 371–377; where state regulations restricted airline advertising, *see Morales*, 504 U.S. at 387–91; where a state consumer fraud law policed airline marketing practices, *see Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 227–28; and where a state common law claim was asserted against the termination of an airline's frequent flyer program, *see Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1431–33. On the other side of the that line, the Court has noted examples of state laws that would not be preempted, such as laws prohibiting gambling and prostitution, zoning regulations, and public health regulations that prohibit all members of the general public from certain conduct (*e.g.*, smoking in public places). *See Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1780 (2013); *Rowe*, 552 U.S. at 375; *Morales*, 504 U.S. at 390. Preemption was also unwarranted where a breach-of-contract claim was confined solely to a contract's terms, with no state-imposed obligations. *See Wolens*, 513 U.S. at 228–33. Finally, the Court found that preemption was unwarranted where a state regulation did not concern the actual transportation of property but only the storage thereof. *See Dan's City*, 133 S. Ct. at 1778–81. As the First Circuit noted, "[t]hese examples demonstrate both that there is a limit to the preemptive scope of § 14501(c)(1) and that one must move quite far afield to confidently reach that limit." *See Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 436–37 (1st Cir. 2016). Nonetheless, "[e]xactly where the boundary lies between permissible and impermissible state regulation is not entirely clear." *Id*.

The critical question before this Court is: on what side of that line does the IWPCA fall? In *Costello v. BeavEx, Inc.,* 810 F.3d 1045, the Seventh Circuit addressed precisely this question as related to a misclassification claim identical to the one before the Court. It concluded "that the IWPCA's effect on the cost of labor is too tenuous, remote or peripheral to have a significant impact on [the motor carrier's] setting of prices for its consumers." *Costello*, 810 F.3d at 1055. In canvassing other circuit and district court opinions, the Seventh Circuit reasoned:

> [T]here is a relevant distinction for purposes of FAAAA preemption between generally applicable state laws that affect the carrier's relationship with its customers and those that affect the carrier's relationship with its workforce. Laws that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA preemption. Laws that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption. The Supreme Court's preemption decisions do not counsel a different conclusion.

6

*Id*. at 1054 (emphasis original). The court considered the impact of the IWPCA on a motor carrier's business model, noting that it was "precisely the type of background labor law . . . that only indirectly affects prices by raising costs." *See id*. at 1055. Despite this indirect affect, however, preemption was unwarranted because "the IWPCA regulates the motor carrier *as an employer*," thereby making the effect on prices too tenuous. *See id*. The Ninth and Eleventh Circuits have employed similar reasoning in upholding state employment laws over FAAAA and ADA preemption. *See Amerijet Int'l, Inc. v. Miami-Dade Cnty., Fla.*, 627 F. App'x 744, 750–51 (11th Cir. 2015) (holding that a municipality's living wage ordinance did not warrant ADA preemption); *Dilts v. Penske Logistics, Inc.*, 769 F.3d 637, 646–50 (9th Cir. 2014) (holding that state meal and rest break laws did not warrant FAAAA preemption). District courts in this district have also employed similar reasoning in holding that the FAAAA does not preempt state wage laws. *See Portillo v. Nat'l Freight, Inc.*, No. 15-cv-7908, 2016 WL 5402215, at *5–6 (D.N.J. Sept. 26, 2016); *Echavarria v. Williams Sonoma, Inc.*, No. 15-cv-6441, 2016 WL 1047225, at *8–9 (D.N.J. Mar. 16, 2016).

In *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, the First Circuit reasoned differently.[2] The *Schwann* court held that the second prong of the Massachusetts employee test, which requires that "the service is performed outside the usual course of business of the employer," was preempted by the FAAAA because the "logical effect" of this requirement would interfere with Congress's deregulatory objective. *See* 813 F.3d at 437–40. Specifically, the *Schwann* court found that the "decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business" that "implicates the way in which a company chooses to allocate its resources and incentivize those persons providing the service." *See id*. at 438. Thus, the second prong "requires a court to define the degree of integration that a company may employ by mandating that any services deemed 'usual' to its course of business be performed by an employee." *See id*. The logical effect of the second prong would, therefore, "preclude [defendant] from providing . . . delivery services through an independent person who bears the economic risk associated with any inefficiencies in performance." *See id*. at 439.

### ii. The IWPCA's Effect on Motor Carriers Does Not Warrant Preemption

This Court is persuaded by the Seventh Circuit's reasoning. "The IWPCA is a law that regulates a labor input and 'operate[s] one or more steps away from the moment at which the firm offers its *customers* a service for a particular price." *See Costello*, 810 F. 3d at 1055 (quoting *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F. 3d 544, 558 (7th Cir. 2012) (emphasis added)). "In other words, the IWPCA regulates the motor

---

[2] Shortly after deciding *Schwann*, the First Circuit applied the same reasoning to a case involving same-day delivery companies, such as Defendant, in holding that the second prong was preempted by the FAAAA. *See Mass. Delivery Ass'n v. Healey*, 821 F.3d 187, 193 (1st Cir. 2016).

carrier *as an employer*, and any indirect effect on prices is too tenuous, remote or peripheral" to warrant preemption. *See id*. (emphasis original) (citation omitted).

Furthermore, the IWPCA's prohibition on wage deductions "can be contracted around by 'express written consent of the employee, given freely at the time the deduction is made.'" *See id*. at 1057 (quoting 820 Ill. Comp. Stat. 115/9). Under the IWPCA, Defendant has the option "to stop making deductions or absorb the transaction costs of acquiring consent." *See id*. This flexibility mirrors that of the state common laws at issue in *Northwest*, which the Supreme Court found were not preempted because the defendant was permitted to contract around them. *See Northwest*, 134 S. Ct. at 1433. Defendant has not shown at this stage that the costs of acquiring consent would have a significant impact on Defendants' prices, routes or services. Perhaps facts will emerge during discovery that will show otherwise; however, the Court finds that the IWPCA is not federally preempted on its face because the law regulates Defendant's relationship with its employees and not its relationship with its customers. *See Costello*, 810 F. 3d at 1055–56. Accordingly, Defendant's motion is **DENIED** with respect to Count I.

### C. Unjust Enrichment

Under Illinois law, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977). Here, Plaintiffs acknowledge that they operated as delivery drivers under agreements executed by both parties. *See* Compl. at ¶¶ 11, 15. Plaintiffs' unjust enrichment claim is, therefore, barred under Illinois law. Accordingly, Defendant's motion is **GRANTED** with respect to Plaintiffs' unjust enrichment claim and Count IV is **DISMISSED with prejudice**.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** with respect to the claims concerning the NJWPL, the NJWHL and unjust enrichment. Accordingly, Counts II, III and IV are **DISMISSED WITH PREJUDICE**. Defendant's motion with respect to the IWPCA claim under Count I is **DENIED**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 7, 2017**